**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                       No. CR 17-02483 KG/JHR

STAR JOSEPH,

     Defendant.

**<u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>**

     **THIS MATTER** is before the Court on the District Judge's Order of Reference referring Defendant Star Joseph's Motion to Discharge Fees and Costs (Doc. 84), Motion to Dismiss and Release (Doc. 85), Motion to Enter Evidence of Government Corruption (Doc. 89), second Motion to Dismiss and Release (Doc. 94), and Writ of Mandamus (Doc. 95) to me for proposed findings and a recommended disposition under 28 U.S.C. §§ 636(b)(1)(B) and (b)(3).  (Doc. 97).  Having reviewed the motions and writ, the Court's docket, and the relevant law, I recommend that the Court deny the motions and writ for the reasons set forth below.

**I.  Background**

     In 2017, Defendant Star Joseph was indicted on one count of High Speed Flight from Immigration Checkpoint in violation of 18 U.S.C. § 758.  (Doc. 10).  Defendant Joseph pled guilty and was sentenced to 24 months imprisonment and 3 years of supervised release on February 6, 2018.  (Doc. 15, 16, 26).  The United States Court of Appeals for the Tenth Circuit affirmed the conviction and sentence. (Doc. 38).

     On July 31, 2020, the United States Probation Office reported a violation of the terms of Defendant's supervised release.  (Doc. 40).  A second report of violation was issued on January 5,

1

2021.  (Doc. 57).  Defendant's supervised release was revoked, and he was sentenced to 10 months of imprisonment at a half-way house and 24 months of supervised release.  (Doc. 61).  On March 9, 2021, a third violation report was issued by the Probation Office.  (Doc. 64).  Defendant's supervised release was again revoked on October 19, 2021, and he was sentenced to 12 months plus 1 day of incarceration.  No additional term of supervised release was ordered.  (Doc. 93).

During the time Defendant Joseph was a detainee at the Cibola County Correctional Facility awaiting trial on the most recent revocation of supervised release, he instituted a number of pro se civil cases in this Court, including:

1. *Joseph v. U.S. Attorney's Office,* CV 21-00836 WJ/KRS (U.S. Attorneys' Office has committed misprision of treason by not having surety bonds on file at the Secretary of State's Office to comply with NMSA 10-2-7);

2. *Joseph v. Albuquerque Police Department and U.S. Marshal's Service,* CV 21-00838 KWR/GJF (Defendant does not have a surety bond on file at the Secretary of State's Office, has committed treason and major fraud, and is engaged in a Racketeering Influenced Corrupt Organization);

3. *Joseph v. Johnson,* CV 21-00895 RB/KK (alleging federal judges are operating as a Racketeering Influence Corrupt Organization);

4. *Joseph v. U.S. Public Defenders Office*, No. CV 21-00903 MV/GJF (Defendants have committed misprision of treason, treason, and major fraud, and are engaged in a Racketeering Influenced Corrupt Organization because they have not reported the surety bond fraud scheme to law enforcement.  Defendant has also deprived Plaintiff of a fair trial and due process because Defendant has a contract with the United States constituting a conflict of interest);

5. *Joseph v. United States Attorneys Office*, CV 21-00904 JCH/KBM (alleging Defendant has committed misprision of treason by not prosecuting the officials who have committed treason by not having surety bonds on file at the Secretary of State's Office);

6. *Joseph v. Johnson, et al.,* CV 21-00878 KG/SCY (Federal judges are operating a Racketeering Influenced Corrupt Organization);

7. *Joseph v. U.S. Public Defenders Office,* CV 21-00837 KWR/KK;

The majority of Defendant's civil cases have been dismissed for failure to state a claim, as frivolous, for failure to comply with Court orders, or for failure to prosecute.[1] Joseph is currently under filing restrictions in this Court.  See *Joseph v. U.S. Public Defender Office, et al.,* CV 21-00837 KWR/KK.  Defendant Joseph also submitted an additional 8 complaints that have been docketed in No. MC 21-00028 WJ:

    8.  *Joseph v. Core Civic,* (MC 21-00028 WJ Doc. 5) (Defendant does not have a surety bond that is required to perfect Defendant's oath of office as required by NMSA 10-2-7);

    9.  *Joseph v. State of New Mexico Board of Finance,* (MC 21-00028 WJ Doc. 12) (Defendant has committed misprision of treason by allowing elected officials to operate without surety bonds and committing treason by not recording and filing surety bonds);

    10.  *Joseph v. Diersen Charities Residential Recovery Center LLC,* (MC 21-00028 WJ Doc. 15) (Defendant is required to record and file a surety bond with the Secretary of State and is taking bribes from the Racketeering Influenced Corrupt Organization to assist human trafficking);

    11.  *Joseph v. United States Probation Office, et al.,* (MC 21-00028 WJ Doc. 16) (Defendants are operating a Racketeering Influenced Corrupt Organization by trafficking citizens into incarceration for profit);

    12.  *Joseph v. Thomas,* (MC 21-00028 WJ Doc, 17) (Defendant federal probation officer is operating a Racketeering Influenced Corrupt Organization);

    13.  *Joseph, et al., v. United States of America, et al.,* (MC 21-00028 WJ Doc. 18) (Multi-Plaintiff complaint alleging all Federal Public Defenders, United States Attorneys, and Federal Judges are members of the B.A.R. (British Accreditation Registry), are loyal to Britain, and must be removed from office and deported to Britain, their law licenses must be revoked and all of their assets forfeited);

    14.  *Joseph v. State of New Mexico and State of New Mexico Elected Officials,* (MC 21-00028 WJ Doc. 22) (Most officials are attorneys and B.A.R. members and have committed treason by not having surety bonds on file with the Secretary of State;

    15.  *Joseph, et al., v. Jaramillo, et al.,* (MC 21-00028 WJ Doc. 24) (Multi-Plaintiff complaint alleging Defendants must be criminally prosecuted for tampering with mail, and any attempt by the Court, Clerk, Judge, or Prosecutor to divert, cancel, or derail this complaint will be deemed as adhering to and giving aid and comfort to the enemy RICO).

---

[1] This Court may take judicial notice of its records in this and other cases that bear directly on the case at hand.  *Duhart v. Carlson,* 469 F.2d 471, 473 (10th Cir. 1972); *United States v. Ahidley,* 486 F.3d 1184, 1192 n. 5 (10th Cir.2007).

Although he was represented by counsel throughout the revocation proceedings, Defendant Joseph also filed five pro se motions and a writ in this case, including a Motion to Discharge Fees and Costs (Doc. 84), a Motion to Dismiss and Release (Doc. 85), a Motion to Enter Evidence of Government Corruption (Doc. 89), a second Motion to Dismiss and Release (Doc. 94), and a Writ of Mandamus (Doc. 95). The District Judge has referred the five pending motions and writ to me for proposed findings, if necessary, and for a proposed disposition. The undersigned determines that a hearing and proposed findings of fact are unnecessary and recommends denial of the five pending motions and writ based on the written record.

## II. Analysis

### A.  Motion to Discharge Fees and Costs (Doc. 84)

Defendant Joseph filed his Motion to Discharge Fees and Costs in this criminal case and a number of his pro se civil cases.  (Doc. 84).  He claims that he should not be required to pay the filing fee in any of his pending cases.  Instead, he claims to be entitled to discharge the fees.  (Doc. 84 at 2).  Defendant's Motion should be denied for two reasons.  First, and most importantly, Defendant qualified for and was appointed counsel to represent him in this case under 18 U.S.C. § 3006A, and Defendant is not responsible for any fees or costs in this proceeding.  (Doc. 2, 82). Defendant Joseph's obligation to pay fees and costs exists only in his pro se civil cases and his Motion to Discharge Fees and Costs has no application to this criminal case.  28 U.S.C. §§ 1914 and 1915 (addressing fees and in forma pauperis proceedings in civil actions).

Second, even if Defendant Joseph was responsible for payment of any fees or costs in this criminal case, his argument to discharge fees and costs is without merit and has already been denied in several of his cases.  *See, e.g.*, *Joseph v. U.S. Public Defender Office, et al.,* CV 21-00903 MV/GJF (Doc. 16 at 6-8).   In his Motion, Defendant asks to be relieved of his obligation

to pay the fees and costs for this proceeding based on a 1933 law rendering gold clauses in contracts unenforceable and authorizing payment of debts in any form of legal United States tender. *See Adams v. Burlington Northern Railroad*, 80 F.3d 1377 (9th Cir. 1996). (Doc. 9 at 3). Defendant's obligation to pay the fees and costs in his civil proceedings is imposed by statute, not by contract. 28 U.S.C. §§ 1914, 1915. Nor does the statute contain any gold clause. The 1933 law does not authorize discharge of the statutory requirement to pay the fees and costs, nor does it, in any way, relieve Joseph of his obligation to pay the filing fees for every action he files in this Court. The Motion to Discharge Fees and Costs should be denied.

### B.  Motion to Dismiss and Release (Doc. 85)

Defendant Joseph's first Motion to Dismiss and Release argues that, because an arresting officer and a residential reentry center, Dierson Charities, did not have surety bonds on file with the New Mexico Secretary of State, they are engaged in a RICO enterprise and had no authority to arrest or detain him. (Doc. 85 at 1-4). He claims that the officer and center have, therefore, committed treason and must suffer death. (Doc. 85 at 2). He contends that these allegations entitle him to immediate release from custody, expungement of his record, and $1,500 for every day he has been illegally detained. (Doc. 85 at 4).

Defendant Joseph's first Motion to Dismiss and Release should be denied for several reasons. First, his Motion is not signed under penalty of perjury or made under oath. Nor is it supported by any form of admissible evidence or citation of proper legal authority. The Motion does not provide any legal or factual basis that would plausibly support a claim for release from custody. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Further, as Joseph has previously been notified, his argument that any failure of an official to have a surety bond posted with the New Mexico Secretary of State does not establish that the

official is engaged in a racketeering enterprise or entitle him to any relief under RICO.  RICO was enacted to address "racketeering activity". The statute defines "racketeering activity" to encompass specified state and federal offenses, which are referred to as predicate acts. These predicate acts include any act indictable under enumerated federal statutes, 18 U.S.C. §§ 1961(1)(B)-(C), (E)-(G), specified crimes chargeable under state law, § 1961(1)(A), and any offense involving bankruptcy or securities fraud or drug-related activity that is punishable under federal law, § 1961(1)(D). Predicate acts can give rise to a RICO claim when they are part of a "pattern of racketeering activity", which is defined as a series of related predicates that together demonstrate the existence or threat of continued criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239 (1989); see § 1961(5) (specifying that a "pattern of racketeering activity" requires at least two predicates committed within 10 years of each other).

RICO's § 1962 sets forth four specific prohibitions against use of a pattern of racketeering activity to infiltrate, control, or operate "a[n] enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  First, Section 1962(a) makes it unlawful to invest income derived from a pattern of racketeering activity in an enterprise. Second, Section 1962(b) makes it unlawful to acquire or maintain an interest in an enterprise through a pattern of racketeering activity. Third, Section 1962(c) makes it unlawful for a person employed by or associated with an enterprise to conduct the enterprise's affairs through a pattern of racketeering activity. Last, § 1962(d) makes it unlawful to conspire to violate any of the other three prohibitions. 18 U.S.C. § 1962(a).

"RICO is to be read broadly." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985). To maintain a cause of action under § 1964(c), a plaintiff must plead and ultimately prove: (1) that the defendant violated § 1962; (2) that the plaintiff's business or property was injured; and (3) that

the defendant's violation is the cause of that injury. *Id.*; *see* 579 U.S. 325, 136 S. Ct. 2090, 2096–97 (2016); *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 881 (10th Cir. 2017); *Robbins v. Wilkie,* 300 F.3d 1208, 1210 (10th Cir.2002). A pattern of racketeering activity must include commission of at least two predicate acts. *Resolution Trust Corp. v. Stone,* 998 F.2d 1534, 1543 (10th Cir.1993). Also, a plaintiff has standing to bring a RICO claim only if he was injured in his business or property by reason of the defendant's violation of § 1962. *Robbins,* 300 F.3d at 1210; *Deck v. Engineered Laminates*, 349 F.3d 1253, 1256–57 (10th Cir. 2003); *Gillmor v. Thomas*, 490 F.3d 791, 797–98 (10th Cir. 2007).

Violations of § 1962 are subject to criminal penalties, § 1963(a). Proceedings to enforce the prohibitions of RICO may be brought only by the U.S. Attorney General, §§ 1964(a)-(b). RICO also creates a private civil cause of action that allows "[a]ny person injured in his business or property by reason of a violation of section 1962" to sue in federal district court and recover treble damages, costs, and attorney's fees. § 1964(c). *RJR Nabisco, Inc.,* 136 S. Ct. at 2096–97. The RICO act does not authorize any relief, monetary or otherwise, in a criminal proceeding.

The unsupported allegation that an official does not have a surety bond on file is not legally or factually sufficient to establish the arresting officer or Dierson Charities have engaged in a pattern of racketeering activity. Nor does it show that Joseph has been injured in his business or property by any such failure to post a surety bond. Joseph does not establish that he is entitled to any relief for his claim of racketeering activity. *RJR Nabisco*, 136 S.Ct. at 2096–97. Further, even if the allegations tended to show any racketeering activity, Defendant Joseph lacks standing to enforce the RICO act. §§ 1964(a)-(b). Last, to the extent his Motion to Dismiss and Release seeks an award of monetary damages, any such request is barred by the doctrine set out in *Heck v. Humphry,* 512 U.S. 477, 487 (1994) (barring a claim for monetary damages where the relief would

7

necessarily imply the invalidity of defendant's conviction or sentence).   The undersigned Magistrate Judge recommends denial of Defendant Joseph's first Motion to Dismiss and Release.[2]

### C.  Motion to Enter Evidence of Courts Corruption (Doc. 89)

In his Motion to Enter Evidence of Courts Corruption, Defendant Joseph asserts that the Court, Judge, Prosecutor, and Public Defender have conspired to commit a laundry list of crimes, ranging from terrorism to treason to Sherman Antitrust Act violations.  (Doc. 89 at 1-2).  Joseph claims they have committed these crimes because they are members of the "B.A.R." meaning "British Accreditation Registry," and, therefore, they are loyal to Britain, no longer citizens of the United States, and have no authority or jurisdiction.  (Doc. 89 at 2). The article attached to Joseph's Motion[3] and his argument that the term "BAR" refers to British Accreditation Registry and that United States lawyers and judges are loyal to Britain are patently false.[4]  By tradition in the United States legal system, the term "bar" means "a partition or railing running across a court room, intended to separate the general public form the space occupied by the judges, counsel, jury and others concerned in the trial of a cause. . .[t]he whole body of attorneys or members of the legal profession, collectively,  are figuratively called the 'bar' from the place which they usually occupy in Court."  *Black's Law Dictionary Online* (2nd ed).  "Bar Association," as the term is used in the United States, means a national, state, or local organization of attorneys.  *Id.*

---

[2] This recommendation is limited to Defendant's racketeering argument in the context of this pending motion and should not be construed to limit any other argument Defendant might make on direct criminal appeal or collateral review that the arresting officer lacked authority to make the arrest.

[3] The article purports to have been written by a "TLB Staff Writer, David-William, and the source cited for the content is "a great guy, Rod Class."  (Doc. 89 at 3-7).

[4]  See www.snopes.com/fact-check/british-accredited-registry-bar/ describing this argument as a false sovereign citizen conspiracy theory that is riddled with bad logic and historical inaccuracies.

As Joseph has already been advised, Defendant Joseph's claim that all lawyers and judges are members of a British Accreditation Registry is frivolous. *Neitzke v. Williams,* 490 U.S. 319, 325-30 (1989); *Joseph v. U.S. Public Defender Office, et al.,* CV 21-00903 MV/GJF (Doc. 16 at 7-8). His unsworn and unsupported allegations and the unauthenticated article do not constitute admissible or relevant evidence in this case. Fed. R. Evid. 402, 403, 602, 603, 802, 803(18). The Motion to Enter Evidence of Courts Corruption (Doc. 89) should be denied.

### D.  Motion to Dismiss and Release (Doc. 94)

Defendant Joseph's second Motion to Dismiss and Release makes the same argument that, because "Plaintiff(s) [United States of America] are all attorneys and the offices that support them, and they are members of the BAR association, the British Accreditation Registry association", he is entitled to be released from custody and awarded $84 million in RICO enhancements. (Doc. 94 at 1-2). The second Motion to Dismiss and Release should be denied for the same reasons set out in part II.C, above.

### E.  Writ of Mandamus (Doc. 95).

In his Writ of Mandamus, Defendant Joseph asks the Court to issue a writ of mandamus transferring this case (and all of Joseph's civil cases) to "the Judge Advocate General at the Pentagon through the Joint Chiefs of Staff." (Doc. 6 at 1). However, Defendant Joseph is not entitled to mandamus relief.

Mandamus is an extraordinary remedy. Under 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." A writ of mandamus will "issue only to compel the performance of a clear nondiscretionary duty." *Pittston Coal Group v. Sebben,* 488 U.S. 105, 121 (1988) (quotation omitted). "To grant mandamus relief,

the court must find (1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and preemptory duty on the part of the defendant to do the action in question; and (3) no other adequate [available] remedy...." *Wilder v. Prokop,* 846 F.2d 613, 620 (10th Cir.1988).  To be eligible for relief, then, Petitioner must establish that the respondent's duty to perform the act in question is plainly defined and peremptory, that he has a clear right to relief, and that he has no other adequate remedy.  *Rios v. Ziglar,* 398 F.3d 1201, 1206 (10th Cir.2005).

Defendant Joseph's request for a writ of mandamus fails for two reasons.  First, Defendant cites no authority that the Court has a plainly defined and preemptory duty to transfer any case to the Judge Advocate General or any other military tribunal.  Although the Court has the discretion to transfer a case to another district court, the Court is not aware of any statute or rule that even grants jurisdiction, much less requires, transfer of this case to the Judge Advocate General at the Pentagon or to the Joint Chiefs of Staff.  *See, e.g.,* 28 U.S.C. § 1404.  Defendant's Motion does not establish a mandatory, non-discretionary duty of the Court to transfer this case. *Pittston Coal Group v. Sebben,* 488 U.S. at 121.

Second, Defendant Joseph does not demonstrate that he is clearly entitled to mandamus relief.  As the sole grounds for his mandamus request, Joseph claims that he "cannot get a fair trial in State or Federal court because both are operating as a Racketeer Influenced Corrupt Organization in violation of the RICO Act (See Star Joseph v. Chief Judge William P. Johnson, et al.)."  (Doc. 95 at 1).  However, Defendant's claims that the Judges of this Court are operating as part of a RICO were dismissed for failure to state a claim for relief and as frivolous, and Joseph's appeal of that ruling has been dismissed by the Tenth Circuit.  See *Joseph v. Johnson, et al.,* No. CV 21-00878 KG/SCY (Doc. 4, 24).  Defendant's allegations do not show a clear entitlement to

mandamus relief.  *Rios v. Ziglar,* 398 F.3d at 1206.  The undersigned recommends denial of Defendant's Writ of Mandamus.

## III.  Conclusion

For the foregoing reasons, I recommend that the Court deny Defendant Star Joseph's Motion to Discharge Fees and Costs (Doc. 84), Motion to Dismiss and Release (Doc. 85), Motion to Enter Evidence of Courts Corruption (Doc. 89), Motion to Dismiss and Release (Doc. 94), and Writ of Mandamus (Doc. 95).

_____
UNITED STATES MAGISTRATE JUDGE

---

**THE  PARTIES  ARE  FURTHER  NOTIFIED  THAT  WITHIN  14  DAYS  OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---